1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

10  ANNETTE M. W.,

11          Plaintiff,

12      v.

13  COMMISSIONER OF SOCIAL
    SECURITY,

14          Defendant.

15

CASE NO. 3:21-CV-5875-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION DENYING BENEFITS

16      Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial

17  of Plaintiff's applications for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Fed.

18  R. Civ. P. 73 and Local Rule MJR 13, the parties have consented to proceed before United

19  States Magistrate Judge Christel.

20                                  BACKGROUND

21      Plaintiff filed for Title II disability in June 2017 alleging a disability onset date of June

22  20, 2017 due to needing a cane, tiredness, elevated heart rate, a torn rotator cuff, diabetic

23  neuropathy, severe anxiety and depression, forgetfulness, and deep vein thrombosis. AR 19, 368.

24  Her application was denied initially and on reconsideration so a hearing was held before an

1 | Administrative Law Judge (ALJ) on January 14, 2020. AR 106-45. On March 12, 2020 the ALJ
2 | determined that Plaintiff was not disabled. AR 16-38.

3 |     The Appeals Council denied Plaintiff's request for review, making the Commissioner's
4 | decision final. AR 5-10; 20 C.F.R. §§ 404.981, 416.1481.

5 | STANDARD

6 |     Pursuant to 42 U.S.C. § 405(g) this Court may set aside the Commissioner's denial of
7 | social security benefits if the ALJ's findings are based on legal error or not supported by
8 | substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th
9 | Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the
10 | Commissioner's decision must be affirmed if it is supported by substantial evidence and free of
11 | harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.
12 | 2008).

13 |     Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of*
14 | *Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009). The U.S. Supreme Court describes it as
15 | "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and
16 | means only—such relevant evidence as a reasonable mind might accept as adequate to support a
17 | conclusion." *Id*. (internal quotations omitted).

18 | THE ALJ's FINDINGS

19 |     The ALJ found Plaintiff to suffer from the severe impairments of diabetes mellitus,
20 | neuropathy, shoulder abnormalities, foot abnormalities, headaches, affective disorder, and
21 | anxiety. AR 22.

22 |     The ALJ found that the combination of Plaintiff's impairments did not meet or equal any
23 | Listing. *Id*. at 22-24.

24 |

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION DENYING BENEFITS
- 2

1    The ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform

2    light work limited by no more than occasional left nondominant upper extremity pushing or

3    pulling; no climbing of ladders, ropes, or scaffolds; no left arm above-shoulder reaching; and

4    performance of  no more than simple tasks and simple changes in routine. *Id*. at 24-25. Based

5    upon vocational expert testimony, the ALJ determined that a person with this RFC remained

6    capable of performing substantial gainful activity in the form of jobs such as assembler, cashier

7    II, housekeeping cleaner, counter attendant, agricultural produce sorter, and advertising material

8    distributor. *Id*. at 31-32. Therefore, the ALJ found that Plaintiff was not disabled. *Id*.

9                                        <u>DISCUSSION</u>

10    Plaintiff argues the ALJ improperly discredited her self-reported limitations, a good deal

11    of the medical evidence, and lay witness testimony leading to the assessment of a flawed RFC

12    and a legally deficient non-disability determination. *See generally* Dkt. 10. The Commissioner

13    disagrees. *See generally* Dkt. 11. For the reasons that follow the Court concurs with the

14    Commissioner.

15    I.    <u>Plaintiff's Credibility</u>

16    Plaintiff argues the ALJ improperly rejected her testimony about the severity of her

17    symptoms. Dkt. 10 at 13. According to Plaintiff, "the ALJ's failure to properly evaluate all of the

18    medical evidence tainted his evaluation" of her testimony" and many of the alleged

19    "inconsistencies" between Plaintiff's testimony and her self-reported activities of daily living

20    that the ALJ pointed out are not true inconsistencies. *Id*. at 14.

21         A.  <u>Credibility Regulations</u>

22    "The ALJ conducts a two-step analysis to assess subjective testimony where, under step

23    one, the claimant must produce objective medical evidence of an underlying impairment or

24

1    impairments that could reasonably be expected to produce some degree of symptom."

2    *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation and internal quotation marks

3    omitted). "If the claimant meets this threshold and there is no affirmative evidence of

4    malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms

5    only by offering specific, clear and convincing reasons for doing so." *Id.*

6           When assessing a claimant's credibility the ALJ may consider "ordinary techniques of

7    credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

8    symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273,

9    1284 (9th Cir. 1996). The ALJ may also consider if a claimant's complaints are "inconsistent

10   with clinical observations[.]" *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294,

11   1297 (9th Cir. 1998).

12          However, affirmative evidence of symptom magnification, or malingering, relieves an

13   ALJ from the burden of providing specific, clear, and convincing reasons for discounting a

14   claimant's testimony. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *Morgan v. Comm'r*

15   *of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Berry v. Astrue*, 622 F.3d 1228, 1235

16   (9th Cir. 2010) (upholding finding where ALJ "pointed to affirmative evidence of malingering").

17          Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*,

18   694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility

19   determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may

20   not reverse a credibility determination where that determination is based on contradictory or

21   ambiguous evidence. *Id.* at 579.

22   ///

23   ///

24

1        B. <u>Analysis</u>

2       As discussed further, below, the ALJ found affirmative evidence in the record that

3 Plaintiff was malingering. AR 26. Specifically, Terilee Wingate, Ph.D. found that Plaintiff tested

4 positive for memory malingering. *Id*. at 26, 747. This affirmative evidence of malingering, alone,

5 supported the ALJ's finding that Plaintiff's subjective symptom complaints were not fully

6 reliable. As a result, the ALJ was not required to provide additional reasons. Nevertheless, the

7 ALJ did provide additional reasons to discredit Plaintiff's testimony.

8       For instance, the ALJ pointed to a medical exam wherein Plaintiff was unable to correctly

9 add two whole numbers or identify how many nickels were in a certain amount of money, but at

10 the same exam she was "surprisingly" able to complete a serial sevens subtraction exercise. *Id*. at

11 26, 478. The ALJ also noted that while Plaintiff testified she could not lift more than two pounds,

12 she separately reported the ability to lift and carry a gallon of milk and two-weeks' worth of

13 groceries to and from the bus. *Id*. at 26, 125, 131, 745. The ALJ found Plaintiff's use of a cane

14 was not supported by any prescription in the record, and that numerous exams noted normal gait,

15 station, and balance without an assistive device. *Id*. at 26-27, 214, 477, 485, 540, 646, 650, 655,

16 663, 666, 669, 699, 759, 769, 781, 785, 799, 802, 805, 871, 942. The ALJ also concluded that

17 Plaintiff's conservative treatment for many of her alleged issues, such as headaches, and her

18 mostly "untreated" type II diabetes "undermine the weight that can be given to the claimant's

19 symptom reports." *Id*. at 25, 27, 482, 551, 646, 655, 659, 663, 665, 668, 989. Significantly, the

20 ALJ also identified numerous examples throughout the record of Plaintiff inconsistently

21 reporting about her use of drugs and alcohol during the relevant period. AR 27.

22       Plaintiff disagrees that, *inter alia*, Plaintiff's ability to walk without a cane and take the

23 bus are "inconsistencies" with the record. Dkt. 10 at 14-15. However the mere "possibility of

24

1   drawing two inconsistent conclusions from the evidence does not prevent an administrative

2   agency's findings from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*,

3   383 U.S. 607, 620 (1966). Moreover, Plaintiff cannot overcome the fact that objective medical

4   tests revealed malingering, which was reason enough for the ALJ to find Plaintiff unreliable.

5        In sum, the Court finds that the ALJ's evaluation of Plaintiff's credibility is supported by

6   substantial evidence.

7     II.    <u>Medical Evidence</u>

8        A.  <u>Medical Evidence Regulations</u>

9        The regulations regarding evaluation of medical evidence were amended for claims

10   protectively filed on or after March 27, 2017, such as this one. *See* 20 C.F.R. §§ 404.1520c(c),

11   416.920c(c). In the new regulations, the Commissioner rescinded Social Security Regulation

12   (SSR) 06-03p and broadened the definition of acceptable medical sources to include Advanced

13   Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants.

14   *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263. The Commissioner also

15   clarified that all medical sources, not just acceptable medical sources, can provide evidence that

16   will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F.

17   Reg. 15263.

18        Additionally, the new regulations state the Commissioner "will no longer give any

19   specific evidentiary weight to medical opinions; this includes giving controlling weight to any

20   medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL

21   168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017); *see also* 20 C.F.R. §§ 404.1520c (a),

22   416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their

23   persuasiveness" based on supportability, consistency, relationship with the claimant,

24

1  specialization, and other factors. 20 C.F.R. §§ 404.152c(c); 416.920c(c). The most important

2  factors are supportability and consistency. 20 C.F.R. §§ 404.152c(a), (b)(2); 416.920c(a), (b)(2).

3      Although the regulations eliminate the "physician hierarchy," deference to specific

4  medical opinions, and assigning "weight" to a medical opinion[1], the ALJ must still "articulate

5  how [he] considered the medical opinions" and "how persuasive [he] find[s] all of the medical

6  opinions." 20 C.F.R. §§ 404.1520c(a), (b)(1); 416.920c(a), (b)(1). The ALJ is specifically

7  required to "explain how [he] considered the supportability and consistency factors" for a

8  medical opinion. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).

9      The supportability factor requires the ALJ to consider the relevance of the objective

10  medical evidence and the supporting explanations presented by the medical source to justify their

11  opinion. 20 C.F.R. § 416.920c(c)(1). Inversely, consistency involves a consideration of how

12  consistent a medical opinion is with the other record evidence. 20 C.F.R. § 416.920c(c)(2).

13      B.  Analysis

14  i.  Paul Bartsch, MS, LPC

15      In March 2017, Paul Bartsch, LPC (Bartsch) completed disability paperwork for Plaintiff.

16  AR 984-88. Bartsch concluded that Plaintiff had fair to no ability to perform the mental abilities

17  necessary for work. *Id.* at 987.

18      The ALJ rejected this opinion because since it predated the relevant period under review

19  (Bartsch had completed this paperwork for Plaintiff's prior, rejected, disability application) the

20

21

22      [1] The Ninth Circuit recently held that "[t]he revised social security regulations are clearly irreconcilable
with our caselaw according special deference to the opinions of treating and examining physicians on account of
their relationship with the claimant." *Woods v. Kijakazi*, 32 F. 4th 785, 787 (9th Cir. 2022), *petition for rehearing

23  pending.* As a result, the Ninth Circuit concluded that the revised regulations displaced the longstanding case law
requiring an ALJ to provide "specific and legitimate" reasons for rejecting a contracted physician's opinion or "clear
and convincing" reasons for discrediting an uncontradicted physician's opinion. *Id.*

24

1   ALJ found Bartsch did not have the benefit of considering, and was inconsistent with, mental

2   health records post-dating the relevant period of review, though the ALJ did not specifically

3   identify which records he was referring to. *Id*. at 30, 181.

4       The Court finds this reasoning to be vague and conclusory. *See Garrison v. Colvin*, 759

5   F.3d 995, 1012-13 (9th Cir. 2014) (*citing Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.

6   1996). As the Ninth Circuit has stated:

7       To say that medical opinions are not supported by sufficient objective findings or
        are contrary to the preponderant conclusions mandated by the objective findings
8       does not achieve the level of specificity our prior cases have required, even when
        the objective factors are listed seriatim. The ALJ must do more than offer his
9       conclusions. He must set forth his own interpretations and explain why they, rather
        than the doctors', are correct.

10      *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)).

11      While the Court notes that the ALJ did, indeed, reference "other mental health records

12  and treatment notes" in a separate section of his opinion (*see e.g*., AR 28-29, 28, 584, 755, 871,

13  913, 1002, 1007, 1016), his failure to link these records to Bartsch and explain and why they are

14  more persuasive than Bartsch's opinion was not harmless, as discussed *infra*.[2]

15      ii.    <u>Robert Verwert, Ph.D.</u>

16      In October 2017, Robert H. Verwert, Ph.D. (Verwert) examined Plaintiff. AR 475-79.

17  The ALJ found Verwert's opinion "somewhat persuasive" but stated that "the opinion that

18  [Plaintiff] cannot interact with others is unsupported by her functioning at this examination, as

19  well as inconsistent with the longitudinal treatment notes describing her as pleasant and

20  cooperative." AR 30.

21

22

23

24      [2] *See infra* p. 12.

1    The Court finds this reasoning to be vague and conclusory. *See Garrison,* 759 F.3d at

2    1012-13. As previously explained regarding Bartsch, *supra,* the ALJ must do more than offer the

3    conclusion that a medical opinion is not supported by the objective evidence—he must "set forth

4    his own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849

5    F.2d at 421.

6    While the Court notes that the ALJ referenced "longitudinal treatment notes" describing

7    Plaintiff as pleasant and cooperative (*see* AR 28, 646, 655, 659, 685, 699, 710, 724, 731, 733,

8    736, 759, 769, 781, 790, 794, 861, 866, 913) in another section of his opinion, the ALJ failed to

9    link these references to Verwert or explain why they were more consistent and supported than

10   Verwert's opinion. This error was not harmless, as discussed *infra*.[3]

11   iii.    Masroor Munim, M.D.

12   Consultative examiner Masroor Munim, M.D. (Munim), examined Plaintiff in November

13   2017. AR 483-85. Munim reported that range of motion testing could not be performed on

14   Plaintiff's left shoulder because Plaintiff complained of severe pain. *Id*. at 484. Munim observed

15   weakness in Plaintiff's left hand grasp**,** noting Plaintiff's statement that squeezing her hand

16   causes pain in her shoulder and forearm. *Id*. at 484-85. Nevertheless, Munim did not observe any

17   deformity, atrophy, or swelling in Plaintiff's left shoulder or hand. *Id*.

18   Munim's impression included a diagnosis of rotator cuff tendonitis of the left shoulder

19   with possible contracture. *Id*. at 485. In a section titled "Recommendations," Munim wrote that

20   Plaintiff's shoulder was very painful and restricted in the range of motion, and that she would

21   require a new MRI and workup, physical therapy, and possible surgery. *Id*. at 485. Munim did

22   not assess functional limitations. *Id*.

23   _____

24   [3] *See id*.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION DENYING BENEFITS
- 9

1    According to Plaintiff, the ALJ should have included a left-hand grip limitation[4] based

2    upon Munim's opinion. However Munim did not assess such a limitation, or any "specific

3    assessment of the claimant's work-related physical functioning in light of her impairments and

4    symptoms", which is why the ALJ did not find it helpful. *Id*. at 30. Indeed, when a doctor's

5    opinion does not assign a specific limitation there is nothing to reject, and therefore nothing for

6    the ALJ to explain. *Turner v. Comm'r of Soc. Sec. Admin*., 613 F.3d 1217, 1223 (9th Cir. 2010).

7    Accordingly, the Court finds no merit to Plaintiff's argument.

8         iv.    <u>Terilee Wingate, Ph.D.</u>

9         Terilee Wingate, Ph.D. (Wingate) evaluated Plaintiff in January 2019 and found she was

10   malingering. AR 26, 29, 747. Specifically, Plaintiff's testing results from the Test of Memory

11   Malingering (TOMM) indicated memory malingering, causing Wingate to conclude that he

12   could not accurately diagnose Plaintiff or provide an accurate functional assessment. *Id*. at 746-

13   47.

14        The ALJ interpreted Wingate's opinion as more evidence that Plaintiff's mental health

15   impairments and functional limitations were not as severe as she alleged. *Id*. at 29.

16        Plaintiff insists the ALJ failed to point to any reason for rejecting Wingate's "significant

17   abnormal findings, including rule-out paranoid schizophrenia, as well as impaired behavior,

18   thought content, perception, insight, and judgment." Dkt. 12 at 6 (citing AR 746-48). However

19   the ALJ did not reject Wingate's findings; Wingate expressly stated that Plaintiff's malingering

20   prevented an accurate diagnosis or functional limitation assessment, resulting in a "rule-out"

21   diagnosis. Accordingly, the Court finds no merit to Plaintiff's argument.

22   _____

23        [4] The ALJ assessed limitations related to Plaintiff's shoulder impairment, limiting her to no more than
     occasional left upper extremity pushing or pulling; no climbing of ladders, ropes, or scaffolds; and no above-
24   shoulder reaching with the left arm. AR 25.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION DENYING BENEFITS
- 10

1       v.       <u>Kathryn Harshman, ARNP</u>

2       In May 2019, Nurse Practitioner Kathryn Harshman (Harshman) completed a medical

3 source statement in which she opined that Plaintiff was "[u]nable to lift at least 2 pounds or

4 unable to stand or walk," and that she had poor memory and concentration. AR 751-53, 920-22.

5       The ALJ discredited Harshman's opinion as unsupported by her own chart notes

6 indicating normal mental status examinations, normal gait, and other findings inconsistent with

7 Harshman's opinion. *Id*. at 29-30, 646, 655, 659, 759, 769, 781, 790, 794. The ALJ also found

8 Harshman's opinion to be unsupported by testing results and based upon Plaintiff's subjective

9 reports. *Id*. at 29. For example, although Harshman's treatment notes consistently showed normal

10 concentration, Harshman assessed Plaintiff with poor concentration. *Id*. at 751.

11       Moreover, the ALJ concluded that Harshman's opinion was inconsistent with the record

12 as a whole, including Plaintiff's own testimony that she could lift and carry a gallon of milk and

13 stand 15 minutes at a time, and mental status exam results indicating malingering. *Id*. at 29-30,

14 125, 747. This was substantial evidence upon which to reject Harshman's opinion.

15       vi.      <u>Other Medical Evidence</u>

16       Finally, Plaintiff takes issue with the ALJ's finding that the psychiatric review techniques

17 and mental opinion assessments at the initial and reconsideration stages of her application

18 process were persuasive. Dkt. 10 at 13; AR 29. According to Plaintiff the ALJ's evaluation of

19 these assessments indicates that "he failed to conduct a de novo review of the record." *Id*. This

20 Court disagrees.

21       The ALJ discussed the record at length, including evidence post-dating the initial and

22 reconsideration evidence, and noted that the initial and reconsideration evidence was consistent

23 with the evidence submitted thereafter but stated that "the undersigned cannot defer or give any

24

1    specific evidentiary weight, including controlling weight, to any prior administrative medical

2    findings or medical opinions …". *Id*. 29.

3        As the Commissioner points out (Dkt. 11 at 11-12), this Court considers "the ALJ's full

4    explanation"—including "all the pages of the ALJ's decision"—along with "the entire record."

5    *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022). In so doing this Court finds the ALJ's

6    conclusion that his own evaluation of the longitudinal record aligned with initial findings in

7    Plaintiff's case was supported by substantial evidence, and had no bearing on his de novo

8    determination that Plaintiff was not disabled. *Compare* AR 23- 24 *with* AR 194, 212.

9       III.    <u>Lay Witness Evidence</u>

10        Plaintiff's final objection to the ALJ's treatment of the evidence is that he failed to

11    evaluate two lay witnesses. Dkt. 10 at 18. Plaintiff argues that if the ALJ had "fully credited" two

12    notations by social security interviewers that Plaintiff had difficulty understanding and

13    answering questions during telephone interviews in July 2017 (AR 364) and December 2017

14    (AR 397) he "could have reached a different disability determination." *Id*.

15        Social Security Administration opinions and Ninth Circuit precedent make clear that an

16    ALJ need not discuss every single note or observation about a claimant's condition. Social

17    Security Ruling 16-3p, available at 2017 WL 5180304, at *7; *Howard ex rel. Wolff v. Barnhart*,

18    341 F.3d 1006, 1012 (9th Cir. 2003)(ALJ is "not required to discuss evidence that is neither

19    significant nor probative.").

20        The Court concurs with the Commissioner that Plaintiff has not provided any reason to

21    believe the above lay witness evidence was significant or probative, and therefore concludes that

22    the ALJ did not err by failing to discuss it.

23

24

1    IV.    Harmless Error

2        Plaintiff asks this Court to remand her case to the Commissioner for further proceedings

3    due to his commission of harmful error. Dkt. 10 at 19.

4        "[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674

5    F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the

6    claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Id.*; *see also*

7    *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). The Ninth

8    Circuit has stated "'a reviewing court cannot consider an error harmless unless it can confidently

9    conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a

10    different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015)

11    (*quoting Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). The

12    determination as to whether an error is harmless requires a "case-specific application of

13    judgment" by the reviewing court, based on an examination of the record made "'without regard

14    to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118-1119 (*quoting Shinseki v.*

15    *Sanders*, 556 U.S. 396, 407 (2009)).

16        In this case the Court finds the ALJ's errors in his evaluation of Bartsch and Verwert

17    were harmful because fully crediting their opinions could have resulted in the ALJ including

18    additional limitations in the RFC, which could have led to a different outcome. Therefore, on

19    remand the ALJ is directed to reevaluate Bartsch and Verwert, consistent with the above

20    discussion, and reassess the sequential evaluation as needed. *See* 20 C.F.R. § 404.1529(c).

21                                  CONCLUSION

22        For the foregoing reasons the Court hereby finds the ALJ improperly concluded Plaintiff

23    was not disabled. Accordingly, this matter be REVERSED and REMANDED to the

24

1  Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings

2  consistent with this order.

3       Dated this 2nd day of August, 2022.

4

5                                              David W. Christel
                                               United States Magistrate Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION DENYING BENEFITS
- 14